UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DR. ARTHUR J. MISISCHIA, DMD, )
)
        Plaintiff, )
)
   vs. ) No. 4:04-CV-1161 (CEJ)
)
ST. JOHN'S MERCY HEALTH, )
SYSTEM, et al., )
)
        Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on the defendants' separate motions to dismiss plaintiff's complaint, pursuant to Rule 12(b)(6), Fed.R.Civ.P. Plaintiff opposes the motions, and the issues are fully briefed.

Plaintiff Arthur J. Misischia, DMD, brings this action pursuant to the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. §§ 1962 *et seq.*, alleging that his former employers sought to discredit him by placing an inaccurate report in the National Practitioners Data Base ("NPDB") in 1994. He also alleges that, in 2001 and 2002, defendants refused to correct the inaccurate report unless he agreed to demands he characterizes as extortionate. Plaintiff names three groups of defendants: (1) St. John's Mercy Health System, f/k/a St. John's Mercy Medical Center, St. John's Mercy Medical Center Foundation, and St. John's Mercy Health Care, f/k/a Unity Health System (collectively, "the St. John's defendants"); (2) John Farrell, Chief Executive Officer of St. John's during plaintiff's tenure, his successor, Mark Weber, and Michael W. Noble, DMD, director of the Maxillofacial Surgery

Section of the surgery department at St. John's; and (3) St. Louis Oral and Maxillofacial Surgeons, Ltd. ("O&MS"), and John Delfino, DMD, former director of the Maxillofacial Surgery Section at St. John's and president of O&MS. Plaintiff brings three claims under RICO, one claim for conspiracy under Missouri law, and one claim for declaratory and injunctive relief. The three groups of defendants have filed separate motions to dismiss. Defendants argue, *inter alia*, that plaintiff's claims are barred by the doctrine of *res judicata* and by RICO's four-year statute of limitations.

**I.  Legal Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. A complaint is not to be dismissed for failure to state a claim for which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim entitling him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations of a complaint are assumed true and construed in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The issue is not whether plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id. Thus,

> [i]f as a matter of law "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," . . . a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.

Neitzke v. Williams, 490 U.S. 319, 327 (1989) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

In ruling on a motion to dismiss, courts may consider materials that are part of the public record or do not contradict the complaint, as well as materials necessarily embraced by the pleadings. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted). See also Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003) (in deciding motion to dismiss, court may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading) (citation omitted). In considering the defendants' motions to dismiss, the Court has reviewed pleadings and orders filed in two previous actions brought by plaintiff. The first action, filed in the Circuit Court of the City of St. Louis in 1994, raised claims arising from plaintiff's suspension and termination. See Misischia v. St. John's Mercy Medical Center, 30 S.W.3d 848 (Mo. Ct. App. 2000) (Misischia I) (affirming trial court's orders, evidentiary rulings, and verdict). In 2002, plaintiff filed suit in the United States District Court for the District of Columbia, seeking modification of the NPDB report. See Doe v. Thompson, 332 F. Supp. 2d 124 (D. D.C. 2004) (dismissing action as time-barred). Both cases are discussed in more detail below.

**II. Background**

In 1985, plaintiff became a member of St. John's Medical and Dental Staff in oral and maxillofacial surgery. From July 1, 1986 through July 25, 1994, plaintiff was employed by St. John's as associate director of the Department of Oral and Maxillofacial Surgery residency program. Defendant Delfino was the director of the residency program and chair of Oral and Maxillofacial Surgery. He was also the sole director, shareholder and president of O&MS. On July 1, 1987, plaintiff entered into a contract with O&MS, pursuant to which he conducted a private practice through O&MS for a consideration of 50% of his receipts.

In February 1993, plaintiff began voicing concerns at St. John's staff meetings regarding the quality of training offered to residents. He also asserted that Delfino was achieving poor surgical results and performing unnecessary or excessive surgery. Plaintiff repeatedly urged the Oral Surgery department to enact a quality assurance policy. Plaintiff alleges that Delfino ordered an assistant to alter minutes of meetings at which plaintiff challenged his competence.

On August 13, 1993, Delfino presented plaintiff with a proposed employment contract that altered the termination provision and imposed an onerous non-competition provision. Plaintiff spoke to defendant John Farrell, St. John's Chief Executive Officer, regarding the proposed contract. He also informed Farrell of his concerns regarding Delfino's competence and alleged improper practices. Farrell subsequently met with Delfino and identified plaintiff as a whistle-blower.

In October 1993, a surgical assistant wrote two reports of plaintiff's inappropriate treatment of a patient. According to the first report, on July 23, 1993, plaintiff grabbed and shook the head of a patient who was under general anesthesia, while swearing at the patient. He then administered an additional bolus of the medication Versed which typically renders a patient amnesic to recent events. The second report stated that on September 27, 1993, plaintiff struck a patient who became combative while emerging from anesthesia.[1] Delfino subsequently identified two additional incidents during which plaintiff allegedly became enraged with staff.

On October 11, 1993, Delfino gave plaintiff one week in which to resign as Associate Director of the residency program. Plaintiff refused to resign and was terminated. On October 27, 1993, St. John's summarily suspended plaintiff's staff privileges. Plaintiff appealed the decision and St. John's appointed an Ad Hoc Investigative Committee (AHIC). After a hearing on November 23, 1993, the AHIC found "one serious incident where in a stressful situation without adequate assistance, plaintiff reacted with excessive physical force in attempting to restrain a patient who was combative while under anesthesia." Misischia, 30 S.W.2d at 855-56. The AHIC recommended that the suspension remain in force

---

[1] Plaintiff did not deny that the two incidents occurred, but challenged the surgical assistant's interpretation of them. Misischia I, 30 S.W.3d at 858.

-5-

until plaintiff received a psychiatric determination of fitness. The St. John's board affirmed the decision.

On March 21, 1994, plaintiff saw a psychiatrist jointly selected by him and St. John's. The psychiatrist found that plaintiff was not suffering from any psychiatric disorder. St. John's revoked the summary suspension on April 25, 1994. At the same time, however, it terminated plaintiff's employment contract and staff privileges, effective July 25, 1994. Earlier, on May 2, 1994, defendant Delfino terminated plaintiff's employment with O&MS.

### **Misischia I**

On October 5, 1994, plaintiff filed suit in the Circuit Court of the City of St. Louis against St. John's Mercy Medical Center, John Delfino, and O&MS. Plaintiff brought claims against all defendants for conspiracy to maliciously prosecute (Count I), conspiracy to abuse process (Count II), retaliatory discharge (Count III), slander (Count IV), tortious interference (Count V), and conspiracy to commit the torts alleged in Counts I through V (Count VI). A seventh count for fraud was asserted against defendants Delfino and O&MS.

Plaintiff alleged, as relevant to the present action, that defendants repeatedly informed him that they would not make a report of his summary suspension to the NPDB if he withdrew his request for an appeal of the suspension. He also alleged that St. John's untimely filed the NPDB report of his suspension and advanced the date of the suspension from October 27, 1993, to

February 2, 1994, in order to make the report appear to be timely filed.  Plaintiff further alleged that, on April 25, 1994, St. John's informed the NPDB that the suspension had been revoked.

The trial court granted St. John's motions to dismiss and for summary judgment on all claims.[2]  In February 1998, plaintiff proceeded to trial against Delfino and O&MS.  The jury found in favor of Delfino and O&MS on most claims but awarded plaintiff $265,000 on his fraud claim.[3]  The trial court's rulings and the jury verdicts were affirmed on appeal.  Misischia v. St. John's Mercy Medical Center, 30 S.W.3d 848 (Mo. Ct. App. 2000).

### Doe v. Thompson

The NPDB is maintained by the United States Department of Health and Human Services and contains information related to physician competence or conduct which could adversely affect the health or welfare of patients.  Doe v. Thompson, 332 F. Supp. 2d at 126.  Hospitals must report any professional review action that adversely affects the clinical privileges of a physician for more than thirty days.  Id.

On February 17, 1994, St. John's reported plaintiff's summary suspension to the NPDB.  On May 20, 1994, St. John's submitted a

---

[2] The trial court found that St. John's was entitled to immunity under the Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101 et seq.  Misischia I, 30 S.W.3d at 858.

[3] Plaintiff's contract with O&MS required him to pay fifty percent of his receipts to O&MS.  Delfino had untruthfully represented to plaintiff that the payment was to cover O&MS's costs to reimburse St. John's for overhead.  St. John's did not require O&MS to pay overhead.

revision, stating that, effective April 24, 1994, the suspension had been lifted. The revised report stated:

> This report revises the adverse action report filed 2/17/94, which informed the [NPDB] of the summary suspension of Dr. Doe pending psychiatric evaluation. Based on the receipt of a positive evaluation, the summary suspension of Dr. Doe has been revoked effective April 25, 1994.

Id. at 126 (revision in original).

Plaintiff argued that the use of the term "positive" was inaccurate in that it indicated that a psychiatric impairment had been found. On March 27, 2002, plaintiff asked HHS to amend the record. On May 3, 2002, acting on the response of HHS, plaintiff applied for Secretarial Review of the report. Id. at 126-27.

The Secretary of HHS concluded that the report was inaccurate. The report was amended to read:

> This report revises the adverse action report filed February 17, 1994, which informed the NPDB of the summary suspension of Dr. Doe pending an appropriate evaluation. Based on the receipt of an evaluation that found that Dr. Doe was not suffering from any type of psychiatric disorder, the summary suspension of Dr. Doe has been revoked effective April 25, 1994.

Id. at 127.[4]

Plaintiff continued to object to any reference to a psychiatric evaluation in the NPDB record and filed suit against the Secretary of HHS, pursuant to the Privacy Act, 5 U.S.C. § 552a.

---

[4]Plaintiff argued that the report should not refer to a psychiatric evaluation because the NPDB Guidebook limited the use of information regarding participation in drug and alcohol treatment programs. The Secretarial Review Decision of October 22, 2004, (Doc. 86, Ex. C) noted that the limitation did not apply to the report at issue because the report did not involve treatment, drugs or alcohol.

-8-

He sought, *inter alia*, an order declaring unlawful any further release of information concerning the fact that he submitted to a psychiatric evaluation, an order directing HHS to reissue a corrected report to all recipients of the earlier versions, expungement of any reference to a psychiatric evaluation, and attorney's fees and costs. Id. at 127-28.

The District of Columbia district court determined that plaintiff's action was barred by the Privacy Act's two-year statute of limitations. Id. at 132-33. In reaching that conclusion, the court rejected plaintiff's contention that a new cause of action was created each time the DHHS disseminated the inaccurate report. Id. at 133. The court held that the two-year limitations period began running in May 1994, when plaintiff received notice of the initial revision submitted by St. John's. Id. at 132, 134.

### C.  **Plaintiff's Present Action**

Plaintiff filed the present action on August 27, 2004. He alleges that, in 2001 and 2002, defendants refused to correct the NPDB entry and attempted to extort money and unlawful promises from him in exchange for correcting the NPDB report.[5] Plaintiff asserts that, beginning in 1993, defendants engaged in a pattern of

---

[5] Counsel for the parties engaged in discussion and correspondence regarding (1) the content of the NPDB report, (2) plaintiff's service as an expert witness in cases against St. John's, and (3) St. John's request for an award of costs against plaintiff. Plaintiff's extortion allegations derive from these discussions among counsel. Plaintiff also contends that counsel for St. John's is a witness to the alleged extortion, by virtue of his participation in those discussions. He separately moves to disqualify counsel.

racketeering activity actionable under RICO. Defendants argue that plaintiff's claims could and should have been brought in <u>Misischia I</u>, and thus they are now barred by *res judicata*. Alternatively, they argue that the claims are untimely under RICO's four-year statute of limitations.

In paragraph 224 of his amended complaint, plaintiff alleges that various mailings and interstate wire transmissions were predicate acts constituting a pattern of racketeering activity within the meaning of RICO. The complaint identifies the following mailings and wire transmissions alleged to constitute predicate acts of racketeering activity:

| Date | Action |
|---|---|
| 8/28/93 | Defendants mailed to plaintiff a letter confirming the suspension of his privileges. |
| 8/28/93 | Defendants mailed to plaintiff a second letter requesting his participation in a psychiatric evaluation. |
| 2/2/94 | Defendants mailed or wired the initial report to the NPDB. |
| 3/23/94 | Defendants caused plaintiff to deliver a letter to the NPDB asking for removal of the initial report. |
| 4/5/94 & 4/20/94 | Defendants caused the psychiatrist's report to be mailed to plaintiff. |
| 4/25/94 | Defendants caused notice of his termination from St. John's to be mailed to plaintiff. |
| 5/4/94 | Defendants caused notice of his termination from O&MS to be mailed to plaintiff. |
| 5/20/94 | Defendants mailed or wired the revised report (containing the reference to a "positive" evaluation) to the NPDB. |

| | |
|---|---|
| 5/20/94 to 4/16/03 | The NPDB report was mailed or wired to third-parties on 61 occasions. |
| 7/25/94 | Defendants mailed to plaintiff notice that his staff privileges at St. John's were terminated. |
| 3/6/01 | Defendants caused plaintiff to mail a letter demanding defendants revise the NPDB report. |
| 3/28/01 | Defendants caused plaintiff to mail a letter to Dr. Michael J. Chehval, president of St. John's medical staff, requesting revision of the NPDB report. |
| 5/14/01 | Defendants caused plaintiff to mail a second letter to Dr. Chehval. |
| 6/12/01 | Defendants mailed a demand that plaintiff refrain from testifying in malpractice actions against St. John's and pay costs and litigation fees from prior litigation in exchange for modifying the NPDB report. |
| 8/30/01 | Defendants mailed to plaintiff another proposed settlement. |
| 9/18/01 | Defendants caused plaintiff to mail a letter to Dr. Chehval regarding the improper use of the peer review process to harm plaintiff who was a whistle-blower. |
| 2/15/02 | Defendants mailed to plaintiff a substantially similar offer to settle. |
| 3/12/02 | Defendants caused plaintiff to mail a dispute initiation form to the NPDB. |
| 2/7/03 | Defendants caused HHS to mail a letter to St. John's directing it to revise the NPDB report. |

### III. Discussion

#### *Res Judicata*

A federal court must give a state court judgment the same preclusive effect it would have in the courts of the rendering state. See Johnson v. City of Shorewood, Minnesota, 360 F.3d 810,

-11-

818 (8th Cir. 2004). *Res judicata,* commonly referred to as claim preclusion, bars the reassertion of a cause of action that has been previously adjudicated in a proceeding between the same parties or those in privity with them. Vogt v. Emmons, 158 S.W.3d 243, 247 (Mo. Ct. App. 2005). The doctrine applies to block a second lawsuit when four elements are the same in both lawsuits: the subject matter, the cause of action, the parties, and the status in which the defendant is sued. McNeill v. Franke, 84 F.3d 1010, 1012 (8th Cir. 1996) (citing King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints, 821 S.W.2d 495, 501 (Mo. 1991)). All four elements are satisfied in this action.

In both Misischia I and the present action, plaintiff alleges that the defendants conspired against him in response to his "whistle blowing" and misused the NPDB to damage his reputation. Thus, the subject matter of the two actions is identical.

Plaintiff contends that parties to the two actions are not the same because he added Noble, Farrell, and Weber as defendants in the new action. *Res judicata* may be applied if the new parties are in privity with the defendants in Misischia I. Privity, as a basis for satisfying the "same party" requirement of *res judicata,* is premised on the proposition that the interests of the party and non-party are so closely intertwined that the non-party can fairly be considered to have had his or her day in court. Stine v. Warford, 18 S.W.3d 601, 605 (Mo. Ct. App. 2000). Farrell and Weber are named by virtue of their positions as CEOs of St. John's; indeed, Weber did not succeed Farrell until after plaintiff was

terminated. Noble is named as successor to Delfino as the director of the Maxillofacial Surgery Section at St. John's. Farrell, Weber, and Noble thus are in privity with St. John's. See Sumlin v. Krehbiel, 876 F. Supp. 1080 (E.D. Mo. 1994) (concluding that plaintiff inmates were in privity with inmates in prior action). The parties in the present case are also sued in the same status as in the prior case. See Barkley v. Carter County State Bank, 719 S.W.2d 906, 913 (Mo. Ct. App. 1990) (defendant bank named in same status because it was "not, for example, sued in one action as an administrator and in another action merely in its corporate capacity").

Plaintiff contends that the two suits do not raise the same causes of action, because Misisichia I raised claims arising from his suspension and termination and the present action raises racketeering claims. *Res judicata* precludes not only those issues on which the court in the former case was required to pronounce judgment, "but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time." Chesterfield Village, Inc. v. City of Chesterfield, 64 S.W.3d 315, 318-19 (Mo. 2002) (emphasis added) (quoting King Gen. Contractors, Inc., 821 S.W.2d at 501)). A court looks to the factual bases for the claims, not the legal theories. Id. at 320. *Res judicata* "prevents reassertion of the same claim even though additional or different evidence or legal theories might be advanced to support it." Id. at 319-20 (plaintiffs' second suit for damages after

action for injunctive relief was barred as arising from same factual basis). See also Felling v. Giles 47 S.W.3d 390, 394 (Mo. Ct. App. 2001). ("A cause of action which is single may not be split and either filed or tried piecemeal, and the penalty for splitting a cause of action is that an adjudication on the merits in the first action is a bar to the second action.")

The test for whether two suits assert the same cause of action is whether the claims arise from the same act, contract, or transaction. Missouri Real Estate & Insurance Agency, Inc. v. St. Louis County, 959 S.W.2d 847, 850-51 (Mo. Ct. App. 1997). See also Daley v. Marriott International, Inc., No. 04-2643 at 10, slip opinion (8th Cir. July 25, 2005) (second law suit is precluded if claims arise out of same nucleus of operative facts as prior claim). "In the final analysis the test would seem to be whether the wrong for which redress is sought is the same in both actions." Id. at 11 (quoting Roach v. Teamsters Local Union No. 688, 595 F.2d 446, 449 (8th Cir. 1979)).

The claims in Misischia I and the present action all arose from the same series of transactions or acts: Plaintiff challenged the quality of the training in the residency program and the necessity and quality of surgery performed by Dr. Delfino. He was reported to the peer review process based on reports that he mishandled patients, and was summarily suspended. A report was made to the NPDB and was subsequently revised; the revision was misleading and created the erroneous impression that plaintiff suffered from a psychiatric impairment. The Court notes that,

-14-

despite knowing the contents of the disputed revision when he filed Misischia I, plaintiff chose not to challenge the report in that lawsuit.

Plaintiff argues that he did not have a cause of action under RICO until the defendants, as a condition to modifying the NPDB report, attempted to extort his agreement to pay litigation costs from Misischia I and to refrain from appearing as an expert witness. Thus, he contends, *res judicata* does not bar this action.

To state a RICO claim, plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Wisdom v. First Midwest Bank of Poplar Bluff, 167 F.3d 402, 406 (8th Cir. 1999). The pattern element requires at least two acts of racketeering activity. Id.; 18 U.S.C. § 1961(5). Mail fraud and wire fraud are among the predicate acts that can form the basis of a RICO claim. § 1961(1). Plaintiff's amended complaint identifies several instances of alleged mail or wire fraud that occurred before he filed Misischia I. His allegation of additional acts after the disposition of Misisichia I does not alter the fact that the basis for his racketeering claims existed during the pendency of that prior case. See Daley at *11 (subsequent actions by defendants did not create new cause of action because they arose from the same nucleus of operative facts as first action).

Plaintiff contends that St. John's has conceded that his current law suit does not arise from the same transaction as Misischia I. This contention is based on St. John's action in state court to limit its obligation to indemnify defendant Delfino,

-15-

pursuant to its separation agreement with Delfino.  St. John's indemnification action does not have any bearing on the *res judicata* analysis.

The Court concludes that plaintiff's federal and state claims in this action are barred by the doctrine of *res judicata*.

**Statute of Limitations**

Civil RICO actions must be brought within four years.  <u>Agency Holding Corp. v. Malley-Duff & Associates, Inc.</u>, 483 U.S. 143 (1987).  This action was filed on August 27, 2004.  In order to be timely, therefore, plaintiff must establish that the limitations period did not begin to run until August 27, 2000.  The limitations period begins to run when a plaintiff knows or should have known of the injury.  <u>Rotella v. Wood</u>, 528 U.S. 549 (2000).  The Supreme Court has expressly rejected an approach that delays the start of the limitations period until the plaintiff discovers both the injury and the pattern of racketeering.  <u>Id.</u>

Plaintiff contends that, under <u>Rotella</u>, the statutory period does not begin to run until a second racketeering act completes the cause of action.  Here, he argues, the second act did not occur until defendants allegedly attempted to extort money and promises from him in 2001 and 2002.  Plaintiff's argument ignores the numerous predicate acts alleged in his complaint that occurred before he filed <u>Misischia I</u>.  Plaintiff argues, without explanation, that all of the acts of alleged wire or mail fraud occurring before 2001 constitute a single predicate act.  The Court sees no basis for so finding.

-16-

Plaintiff argues that the four-year statutory period has not run because he alleges multiple distinct injuries. However, "non-independent injuries will not cause a new limitations period to accrue." Bingham v. Zolt, 66 F.3d 553, 560 (2nd Cir. 1995). All of plaintiff's alleged injuries – his suspension and dismissal, the misleading report to the NPDB, the dissemination of that report to third parties, and the alleged attempt to use the NPDB report to coerce his cooperation – occurred prior to August 27, 2000. Defendants' actions after August 27, 2000, are more properly characterized as new predicate acts, rather than new injuries. Plaintiff's claims under RICO are barred by the four-year statute of limitations.

In conclusion, the Court holds that plaintiff's claims against all defendants are barred by *res judicata*. Alternatively, the Court holds that plaintiff's claims under RICO are time-barred and the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendants John Delfino and St. Louis Oral & Maxillofacial Surgeons, Ltd., to dismiss for failure to state a claim [#27] is **granted**.

**IT IS FURTHER ORDERED** that the motion of defendants John Farrell, Michael Noble, and Mark Weber to dismiss [#37] is **granted**.

**IT IS FURTHER ORDERED** that the motion of defendants St. John's Mercy Health Care, St. John's Mercy Health System, and St. John's Mercy Medical Center Foundation to dismiss [#40] is **granted**.

**IT IS FURTHER ORDERED** that plaintiff's motion to disqualify counsel [#31] is **denied as moot.**

**IT IS FURTHER ORDERED** that the motion of the St. John's defendants to strike plaintiff's response or, in the alternative for leave to file a sur-reply [#86] is **denied as moot.**

A separate order of dismissal will be entered this same date.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 5th day of August, 2005.